

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In re the Matter of the Guardianship of ROBERT HAMLIN, | ) ) ) | No. 69450-2-I |
| | ) | DIVISION ONE |
| Deceased. | ) ) | |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL & HEALTH SERVICES, | ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| v. | ) ) | |
| AVIS HAMLIN, | ) ) | |
| Appellant. | ) | FILED:  June 22, 2015 |

SCHINDLER, J. — The State of Washington Department of Social and Health

Services filed a petition to appoint a guardian for Robert Hamlin.  Following a contested

hearing on February 1, 2012, the court entered an order appointing a certified guardian

for Robert.[1]  Robert died on February 20, 2012.  On appeal, Avis Hamlin contends the

court erred in denying her request for a jury trial on the guardianship and to appoint her

as the guardian.  Because we can no longer provide effective relief and the case does

not present a question of continuing and substantial public interest, we dismiss the

appeal as moot.

---

[1] We refer to Robert Hamlin and Avis Hamlin by their first names for clarity.

On August 12, 2011, the State of Washington Department of Social and Health Services (Department) received a referral from the United States Department of Veterans Affairs (VA) that 77-year-old Robert Hamlin was being neglected. The referral states Robert's hospital physicians were concerned his spouse Avis Hamlin was not capable of properly caring for him at home.

On October 20, the Department filed a motion for a "Vulnerable Adult Protection Order" (VAPO) to prevent Avis from removing Robert from "a skilled medical facility." On October 24, the Department filed a petition to appoint a guardian for Robert. The petition states Robert "exhibits signs of late stage dementia" and "is not capable of caring for himself." The petition asserts Robert "is not receiving the medication, medical equipment or skilled care he requires" because Avis "lacks the ability to ensure his care needs are being met."

Adult Protective Services (APS) social worker Heidi Wilson submitted a declaration in support of the guardianship petition. Wilson states that in February 2011, Robert was admitted to Harborview Medical Center (Harborview) for 10 days for a "urinary tract infection and delirium." Wilson states Harborview medical staff "did not feel he was safe at home" because Robert arrived "in poor hygiene and showed evidence of frequent falls." Harborview staff reported Avis was "very guarded about sharing information with the team about the situation, social support, or living environment" and she demonstrated a "lack of insight into her inability to care for him at home."

Wilson states that on March 3, 2011, Avis acted "[a]gainst [m]edical [a]dvice" by removing Robert from a nursing facility. Between March and October, Avis repeatedly

refused in-home services and accused multiple caregivers of abusing Robert. On October 4, Robert arrived at Swedish Edmonds Emergency Room (Swedish ER) with an "exploding" colostomy bag that had "not been changed in over a month." According to Wilson, Avis transferred Robert to the VA hospital "prior to the [Swedish ER] completing Mr. Hamlin's medical treatment." Wilson states that on October 12, the VA hospital reported it was "unable to find an agency to provide in-home services due to concerns of high care needs and wife's refusal for non Anglo caregivers." Wilson states that in her opinion, Avis's "poor judgment, oversight and decision making" placed Robert's health "at significant on-going risk."

On October 24, the court appointed a guardian ad litem (GAL) to represent the best interests of Robert during the guardianship proceeding. On October 27, the court scheduled a hearing on the guardianship petition for December 12.

On October 28, Avis filed a "General Durable Power of Attorney Effective Immediately of Robert L. Hamlin" with the King County Recorder's Office. The power of attorney is dated April 21, 2011 and designates Avis as Robert's "attorney-in-fact." The power of attorney does not designate anyone as an alternate attorney-in-fact.

On December 7, the GAL filed a report recommending the court appoint a "Certified Professional Guardian" for Robert. The report states Robert "clearly does not have the cognitive ability" to manage his health, safety, housing, nutrition, or finances. The report states the GAL met with Robert at the VA hospital on October 29 and he provided "[n]o coherent response" to whether he objected or agreed to the guardianship and whether he wanted an attorney.

The court continued the guardianship hearing to January 18, 2012. On January 4, the GAL filed a supplemental report. The report states that when the GAL asked Robert on January 4 whether he objected to the guardianship, Robert responded, "Whatever is proper." The report states Robert answered "[n]o" when the GAL asked whether he wanted an attorney.

On January 17, Avis filed an "Objection to Private GAL Supplemental Report." The objection challenges "all recommendations of [GAL]," including "the GAL report and Supplemental reports and everything they filed in this case." The court continued the hearing on the guardianship petition to February 1.

On January 23, Avis filed a motion to dismiss the guardianship proceeding or, in the alternative, demanded a jury trial. The motion states, in pertinent part, "I allege this Guardianship was filed improperly out of biased discrimination to defraud a Vulnerable Adult and does not have Standing. . . . If the Court will not dismiss the action, I ask for a trial by Jury and Fair Hearing." On January 25, Avis filed a petition nominating herself as Robert's guardian "as he has directed by his free will and Durable Power of Attorney."

At the February 1 guardianship hearing, Avis renewed her motion for a jury trial. The court denied the motion. The court ruled, in pertinent part, "This is his right. [Robert] did not ask for an attorney. [Robert] didn't ask for a trial." A number of witnesses testified at the hearing, including APS social worker Heidi Wilson, the GAL, and Avis.

The court granted the motion to enter a VAPO and the petition to appoint a certified guardian. The court ruled, "It is . . . quite clear, from the mountain of

4

information that I have received, . . . that [Robert] clearly does need a guardian of both the estate and the person." The court found "there is sufficient evidence that indicates that [Avis] has attempted to remove, and has removed, [Robert] against medical advice from a couple of facilities" and was unable to care for him.

> They've been married for a very long time, as I understand it, and in the past I believe [Avis] has been able to successfully help him. But I believe that that time is over, based on the evidence that I'm seeing. . . .
>
> . . . .
> The issue about the medical care at home, there was an example in here about the colostomy bag which hadn't been changed for over a month. [Robert] was at home at the time. He had severe sepsis. . . . [I]t really is beyond her ability to care for him.

The court rejected Avis's request to act as Robert's guardian. "[T]he power of attorney to me does not appear to be a viable alternative to a guardianship in this case. He needs a professional at this point."

The court entered an order on February 1, 2012 appointing a certified guardian for "the Person and Estate of Robert Hamlin." The findings of fact state, in pertinent part:

> **Alternative Arrangements Made By Robert Hamlin:** Robert Hamlin did make alternative arrangements for assistance, by executing a General Durable Power of Attorney on April 21, 2011. This is not an effective less restrictive alternative to guardianship because Mrs. Hamlin does not possess the requisite qualities to be her husband's decision maker; no alternate attorney-in-fact is nominated. Mr. Hamlin no longer possesses capacity to execute a new power of attorney.

More than 10 days after entry of the order, Avis filed a "Motion for Revision," asserting a "lack of due process and violation of civil rights." The court denied the motion "as untimely." Robert died on February 20, 2012.

On March 29, the court entered an "Order Approving Guardian's First and Final Report." The order appoints a GAL "to review the activities of the Guardian" and to "file a written report and recommendations regarding the Guardian's report."

On August 21, the court entered "Findings of Fact and Order Discharging Guardian Ad Litem, Approving Guardian's First and Final Report, Approving Fees and Costs, and Other Relief and Unblocking Account to Pay Approved Fees." The order discharges the GAL and ratifies the March 29 Order Approving Guardian's First and Final Report. On September 19, Avis filed an appeal of the August 21, 2012 order approving the final report.

Avis contends the court erred in denying her request for a jury trial and refusing to appoint her as the guardian.[2] The Department contends that because Robert died on February 20, 2012, the court can no longer provide effective relief and we should dismiss the appeal as moot. We agree with the Department.

Whether an appeal is moot is a question of law we review de novo. Bavand v. OneWest Bank, FSB, 176 Wn. App. 475, 510, 309 P.3d 636 (2013).

As a general rule, we will dismiss a case as moot if " 'a court can no longer provide effective relief.' " In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)). We may decide a case that is technically moot "if it presents issues of continuing and substantial public interest." Horner, 151 Wn.2d at 891. In determining whether a case

---

[2] Avis also contends the court erred in approving the guardian's final report but does not provide any argument or citation to authority in support of this assignment of error. Therefore, we do not address it. See RAP 10.3(a)(6); In re Guardianship of Cornelius, 181 Wn. App. 513, 534, 326 P.3d 718 (2014). In addition, Avis asserts deprivation of due process because the property subject to the guardianship was community property. " 'Parties raising constitutional issues must present considered arguments.' " Health Ins. Pool v. Health Care Auth., 129 Wn.2d 504, 511, 919 P.2d 62 (1996) (quoting State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)). Because Avis fails to offer considered argument on this issue, we do not consider this argument.

involves the requisite degree of public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for the future guidance of public officers, (3) the likelihood that the question will recur, and (4) the " 'level of genuine adverseness and the quality of advocacy of the issues.' " Horner, 151 Wn.2d at 892 (quoting Westerman v. Cary, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)).

Avis does not address whether the case presents issues of continuing and substantial public interest. Because the court can no longer provide effective relief, we dismiss the appeal as moot.

WE CONCUR: